FILED & JUDGMENT ENTERED
Steven T. Salata

Sep 15 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13-50033 |
| | ) | |
| **MIDSTATE MILLS, INC.,** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE ORDER APPROVING SETTLEMENT AGREEMENT

This matter comes before the court on the Motion to Enforce Order Approving Settlement Agreement (the "Motion to Enforce") of Branch Banking and Trust Company ("BB&T"), Jeff Kies, Carl Marks Advisory Group ("Carl Marks"), Steven D. Arndt, Robert D. Drum, Cynthia D. Gabriel, Dianne D. Fulbright, the Estate of Boyd H. Drum, the Estate of Brevard Arndt, and Alex Arndt (collectively, the "Georgia Defendants"), the response of the Chapter 7 Trustee, A. Cotten Wright (the "Trustee") (the "Trustee's Response"), the response of Agrowstar, LLC; J&D of Lancaster, Inc.; Performance AG, LLC; and Kevin D. Baucom

(collectively, the "Georgia Plaintiffs")(the "Georgia Plaintiffs' Response"), and the reply of the Georgia Defendants.

In the Motion to Enforce, the Georgia Defendants seek to have this court enforce its January 16, 2014 Order Granting Trustee's Motion for Approval of Settlement with Georgia Defendants (the "Georgia Defendants' Settlement Order") and enjoin the Georgia Plaintiffs from prosecuting a complaint filed in the Superior Court of Houston County, Georgia against the Georgia Defendants on September 4, 2014 or otherwise taking steps to assert claims released by the Georgia Defendants' Settlement Order. Upon consideration of the pleadings, the arguments of counsel, and the relevant law, the court concludes that it should enjoin the Georgia Plaintiffs from pursuing Counts 8 and 9 of the Second Georgia Complaint. The remaining claims are personal to the Georgia Plaintiffs and, therefore, are not barred by the Trustee's settlement with the Georgia Defendants.

## **FACTS**

1.  On January 18, 2013, Agrowstar, LLC; J&D Lancaster, Inc.; and Performance AG, LLC (collectively, the "Petitioning Creditors") filed a Chapter 7 involuntary petition against the Debtor. Upon the Debtor's motion, the court entered an Order Granting Motion to Convert on January 30, 2013 that converted the case to a proceeding under Chapter 11. The entry of the

Order Granting Motion to Convert constituted the entry of the order for relief in the Chapter 11 case.

2.   On January 23, 2013, BB&T filed a motion for relief from stay to exercise its state law foreclosure rights as to the Debtor's real and personal property. On February 4, 2013, the court granted BB&T's motion for relief from stay for cause under 11 U.S.C. § 362(d)(1) and (2) due to a lack of equity in the assets securing the Debtor's obligations to BB&T and because those assets were not necessary to an effective reorganization that was in prospect.

**The First Georgia Complaint**

3.   On March 13, 2013, the Petitioning Creditors filed a Motion to Convert Case from Chapter 11 to Chapter 7 (the "Motion to Convert"). On that same day, and without first seeking relief from the automatic stay, the Georgia Plaintiffs (the Petitioning Creditors joined with Kevin D. Baucom) filed a complaint in the Superior Court of Houston County, Georgia (the "First Georgia Complaint") against the Georgia Defendants. The Georgia Defendants removed the First Georgia Complaint to the United States Bankruptcy Court for the Middle District of Georgia.

4.   In response to the First Georgia Complaint, the Debtor filed Adversary Proceeding No. 13-5012 against the Georgia Plaintiffs in this court asserting several causes of action, including a claim for injunctive relief. In the claim for

injunctive relief, the Debtor alleged that the filing and prosecution of the First Georgia Complaint was in violation of § 362(a)(3) because it constituted an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

5.   The court subsequently entered an order granting the Motion to Convert the case to a Chapter 7 and appointing A. Cotten Wright as the Chapter 7 Trustee on April 19, 2013. On April 22, 2013, the Trustee filed a motion to intervene as the real party in interest with respect to the claims asserted by the Debtor against the Georgia Plaintiffs in Adversary Proceeding No. 13-5012. The motion to intervene was granted by a consent order on April 25, 2013. The Trustee also sought a temporary restraining order in the adversary proceeding to enjoin the Georgia Plaintiffs from pursuing any claims in the First Georgia Complaint that constituted property of the bankruptcy estate.

6.   On June 28, 2013, the Trustee filed a Motion for Sanctions for Violation of Automatic Stay and for Extension of the Stay Pursuant to 11 U.S.C. § 105(a) (the "Sanctions Motion") seeking to have this court sanction the Georgia Plaintiffs for violating the automatic stay by filing the First Georgia Complaint and enjoin the Georgia Plaintiffs from pursuing the claims raised in the First Georgia Complaint pending further

order of this court. In the Sanctions Motion, the Trustee noted that "[c]ounsel for the Georgia Plaintiffs have asserted to the Trustee that the Georgia Complaint reflects claims for injuries that were peculiar to those plaintiffs." Sanctions Motion at ¶ 16. She insisted, however, that "[t]he face of the Georgia Complaint reveal[ed] no allegations of specific harm to the Georgia Plaintiffs . . . ." Id. In any event, she argued that the Georgia Plaintiffs did not have the "authority to unilaterally determine whether or not the claims raised in the Georgia Complaint reflect Estate Claims." Id.

**Settlement with the Trustee**

7.    The hearing on the Sanctions Motion was convened on September 13, 2013 but then adjourned to allow the Trustee and the Georgia Plaintiffs to finalize a settlement of their dispute. The negotiations resulted in the Trustee filing a motion to approve a settlement with the Georgia Plaintiffs on September 27, 2013 that, in short, would have allowed the Trustee to assign any claims of the bankruptcy estate against the Georgia Defendants to the Georgia Plaintiffs in exchange for $140,000. The Georgia Defendants objected to the proposed settlement and, in particular, the assignment of claims due to applicable North Carolina law, which prohibits the assignment of tort claims. The court agreed with the Georgia Defendants and, on December 11, 2013, entered an Order Denying Trustee's Motion

for Approval of Settlement with Georgia Plaintiffs and for Authority to Sell Property Pursuant to 11 U.S.C. § 363.

8.    The Trustee then agreed to settle any and all claims the bankruptcy estate had against the Georgia Defendants. As part of their settlement, the Trustee released the Georgia Defendants from all claims the Trustee had standing to bring against them in exchange for a payment of $75,000 and the Georgia Defendants' acquisition of and withdrawal of an $11 million deficiency claim filed by the Debtor's successor, Renwood Mills, LLC.

9.    On January 16, 2014, the court entered the Georgia Defendants' Settlement Order, which contained the following release in paragraph 2:

> [T]he Georgia Defendants and their respective officers, directors, employees, agents, representatives, heirs, assigns, predecessors and attorneys . . . are hereby deemed released from any claims or causes of action that are property of the Debtor's bankruptcy estate or that the Trustee has standing to pursue on behalf of the Debtor and/or the Debtor's bankruptcy estate, including, without limitation, all claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unfair and deceptive trade practices, fraud, constructive fraud, aiding and abetting constructive fraud, negligent misrepresentation, negligence, alter ego, fraudulent transfer, fraudulent conveyance, preferential transfer, aiding and abetting, conspiracy, breach of duty of loyalty, corporate waste, deepening insolvency, tortious breach of contract, attorneys' fees, expert fees, costs and interest, and any and all other claims or rights to assert claims, whether known or unknown or hereafter arising. . . . (emphasis added).

6

10.   Thereafter, the court entered an Order Granting Trustee's Motion for Approval of Second Settlement with Georgia Plaintiffs (the "Georgia Plaintiffs' Settlement Order") on January 28, 2014, pursuant to which the Trustee released any claims she held against the Georgia Plaintiffs in exchange for a payment of $65,000 and an agreement that any claims of the Georgia Plaintiffs would be disallowed in the bankruptcy case. Notably, the settlement did not include any assignment or abandonment of estate claims or make any determination regarding the Georgia Plaintiffs standing to pursue claims against the Georgia Defendants. In that regard, the Georgia Plaintiffs' Settlement Order provided that the "release shall not apply as to any claims the Georgia Plaintiffs may have against the Georgia Defendants, if any, which are specifically excluded and excepted from this release and which claims the Georgia Plaintiffs shall specifically retain; provided, further, that this Order makes no determination as to whether the Georgia Plaintiffs have standing to pursue any claims against the Georgia Defendants." Georgia Plaintiff's Settlement Order at ¶ 4(e).

11.   In accordance with the Georgia Plaintiffs' Settlement Order, the Trustee withdrew the Sanctions Motion on February 27, 2014. In addition, the court entered an Order Lifting Automatic Stay on February 28, 2014 that lifted any stay of the First

Georgia Complaint and granted the Georgia Plaintiffs relief from stay to "pursue any claims which they have standing to bring on their own behalf against the Georgia Defendants, Pathfinder Group, LLC and each of their respective insurance carriers." Order Lifting Automatic Stay at 2.

12.  Following her settlements with the Georgia Plaintiffs and the Georgia Defendants, the Trustee completed her administration of the Debtor's case. The court entered the Order Approving Trustee's Final Report on August 28, 2014, the Trustee made distributions to creditors, and she filed her Rule 3011 report on November 10, 2014. Following her review of the Rule 3011 report, the Bankruptcy Administrator (the "BA") filed the Bankruptcy Administrator's Certification of Chapter 7 Trustee's Final Account and Distribution Report and Application to be Discharged indicating that the BA found no basis to object to the Trustee's Rule 3011 report and moved for the case to be closed.  Accordingly, but for resolution of the Motion to Enforce, this case is fully administered and ready to be closed.

**The Second Georgia Complaint**[1]

13.  On November 12, 2014, just two days after the Trustee filed her Rule 3011 report, the Georgia Defendants filed the

---

[1] According to the Motion to Enforce, the Georgia Plaintiffs dismissed the First Georgia Complaint while it was pending in the United States Bankruptcy Court for the Middle District of Georgia.

Motion to Enforce, which was prompted by the filing of a second complaint on September 4, 2014 by the Georgia Plaintiffs against the Georgia Defendants in the Superior Court of Houston County (the "Second Georgia Complaint"). The Second Georgia Complaint was subsequently removed to the United States District Court for the Middle District of Georgia. The Second Georgia Complaint is nearly identical to the First Georgia Complaint and contains the following causes of action: (1) constructive fraud against the Debtor's officers and directors; (2) aiding and abetting constructive fraud against Jeff Kies, Carl Marks and BB&T, (3) unfair and deceptive trade practices against all defendants; (4) fraud against all defendants; (5) negligent misrepresentation against the Debtor's officers and directors; (6) negligent misrepresentation against Carl Marks and Jeff Kies; (7) negligent misrepresentation against BB&T; (8) alter ego against BB&T, Carl Marks and Jeff Kies; (9) injunction and avoidance of fraudulent transfer against the Debtor's directors and BB&T; and (10) attorneys' fees, expenses of litigation and punitive damages.

14.  The key allegations underlying both complaints are that before filing bankruptcy, the Debtor was an agricultural products mill that processed and refined corn and wheat. For many years and until about the summer of 2012, the Georgia Plaintiffs sold and delivered large quantities of wheat to the

Debtor. The Second Georgia Complaint alleges that in the spring and summer of 2012, the Debtor became insolvent. The insolvency was detected in a June 2012 audit that revealed about $5 million in inventory that was misrepresented on the Debtor's books.

15. According to the Second Georgia Complaint, once the Georgia Defendants became aware of the Debtor's deteriorating financial condition, they put in place a scheme to take advantage of the Georgia Plaintiffs to advance their own self-interests. In that regard, the Georgia Plaintiffs allege that "[u]pon realizing the peril of the situation, Midstate's lender, BB&T, directed Midstate's Board of Directors to hire Carl Marks and its agent, Jeff Kies, to take control of Midstate's operations, cash flow, and management. Taking advantage of the trust of the Georgia Plaintiffs, who had no reason to suspect Midstate's insolvency, and at the direction of BB&T, Carl Marks and its agent, Jeff Kies, directed Midstate not to pay the Georgia Plaintiffs but instead to accept their wheat for processing with no intent to pay for it." Georgia Plaintiffs' Response at 5. And with the knowledge that they would not pay the Georgia Plaintiffs for their wheat, the "Georgia Defendants controlling the insolvent Midstate induced the Georgia Plaintiffs to continue shipping large quantities of wheat to Midstate by continuing to tell them they would be paid as if nothing had changed." Id.

16.    Rather then paying the Georgia Plaintiffs, the Second Georgia Complaint alleges that the Georgia Defendants used the money made from processing the wheat to continue making debt payments to BB&T. To ensure their compliance with this scheme, the Georgia Plaintiffs assert that BB&T slashed the personal guaranties of the Debtor's directors from $5 million to $500,000.00. Finally, upon asking why they were not receiving payment for their wheat shipments, the Georgia Plaintiffs allege they were told the Debtor was in the process of being sold for a substantial amount and that they would be taken care of when the deal closed. Ultimately, the sale of the Debtor during this case resulted in no payment to the Georgia Plaintiffs. According to the Georgia Plaintiffs, "[t]his was accomplished through Carl Marks and its agent Jeff Kies at BB&T's direction for the purpose of benefitting BB&T and Midstate's Directors personally and to the detriment of the Georgia Plaintiffs. The conduct of which the Georgia Plaintiffs complain against the Georgia Defendants 'did no harm to Midstate, but led to particular injury to Plaintiffs.'" Id. at 6 (quoting the Second Georgia Complaint at ¶ 124).

**The Motion to Enforce Order Approving Settlement Agreement**

17.    On November 12, 2014, the Georgia Defendants filed the Motion to Enforce that is before the court in which they seek to have the court enforce the Georgia Defendants' Settlement Order

and enjoin the Georgia Plaintiffs from pursuing claims of the
bankruptcy estate that had previously been settled by the
Trustee.  The Georgia Defendants argue that under the Fourth
Circuit case of National American Insurance Co. v. Ruppert
Landscaping Co., 187 F.3d 439 (4th Cir. 1999), cert. denied, 528
U.S. 1156 (2000), the Trustee has a superior right to pursue
potential estate claims against the Georgia Defendants which
preempted the Georgia Plaintiffs' claims against the Georgia
Defendants and deprived them of standing to assert their claims
in state court. Motion at 3, 11-13. More specifically, the
Georgia Defendants argue that the filing of the bankruptcy case
has a "channeling" effect because a trustee's right to bring
claims preempts creditors' rights to the extent the creditor
seeks to assert a claim outside of bankruptcy with a similar
object and purpose of claims held by the estate. Motion at 10-
11. Therefore, the court's approval of the settlement of the
estate's claims against the Georgia Defendants bars the Georgia
Plaintiffs from asserting the causes of action they have
asserted in the Second Georgia Complaint. Motion at 3.  In
addition, the Georgia Defendants insist that "the Georgia
Plaintiffs' actions are an affront to the bankruptcy process in
general, and, if permitted to go unchecked, will undermine
critical aspects of federal law and policy underlying the
bankruptcy process and the superior rights granted to debtors

and trustees on which the equitable functioning of any bankruptcy case is dependent." Motion at 3.

18.   The Trustee's Response urges the court to enforce the Georgia Defendants' Settlement Order and award the Trustee her fees and expenses incurred in connection with having to respond to the Motion to Enforce. While the Motion to Enforce focuses on Ruppert Landscaping and the Trustee's superior right to pursue potential estate claims, the Trustee recognizes that she had the first crack at those claims and had settled with the Georgia Defendants. Therefore, "[u]nless the Georgia Plaintiffs can plead *individualized harm* rooted in *specific misrepresentations* made to them *personally*, the Georgia Plaintiffs have no state law causes of action to pursue." Trustee's Response at 12.

19.   According to the Trustee, the Second Georgia Complaint plainly sought to "regurgitate claims that the Trustee ha[d] already asserted ownership of on behalf of the bankruptcy estate and settled." Trustee's Response at 12. In sum, the Trustee argues that by filing the First Georgia Complaint, the Georgia Plaintiffs highjacked the Trustee's claims against the Georgia Defendants, which resulted in the Sanctions Motion and ultimately a settlement that included a payment of $65,000 by the Georgia Plaintiffs plus the disallowance of any claims asserted by the Georgia Plaintiffs. Consequently, the "Georgia Plaintiffs should not be permitted a late-date end-run around

this Court's Orders as a means of avoiding the consequences of their prior actions and decisions before and during this case." Trustee's Response at 12.

20.  The Georgia Plaintiffs' Response frames the issue as whether the Trustee released the claims they were asserting in the Second Georgia Complaint. They agree with the Trustee's assertion that they are free to pursue any claims that are personal to them, and they insist that the focus of the Second Amended Complaint is not the "mortal injury suffered by Midstate at the hands of its directors and managers," but, rather, the fraud and injury committed directly against the interests of the Georgia Plaintiffs by the Georgia Defendants. Georgia Plaintiffs' Response at 2.

## Conclusions of Law

21.  Because of the procedural posture of this case, the court agrees with the Trustee that the Georgia Defendants' reliance on Ruppert is misplaced. Ruppert addressed a situation in which a creditor sought to pursue claims during the bankruptcy case and before the trustee had determined whether to pursue or abandon similar claims. In contrast, this case involves the pursuit of claims by creditors following the Trustee's settlement of all causes of action belonging to the estate. As the Bankruptcy Court for the District of South Carolina noted, "[c]ertainly, actions by individual creditors

that are very similar in object and purpose to a trustee's cause of action should take a back seat while those claims are pursued by the trustee in order to eliminate wasteful and competitive litigation, but individual creditors should not be precluded from pursuing direct actions once the trustee has resolved or abandoned similar causes of action belonging to the estate." In re Glo-Tex Int'l, Inc., No. 07-06449, 2010 WL 4916574, at *6 (Bankr. D.S.C. Nov. 30, 2010).

22. Thus, the issue before the court is whether the causes of action the Georgia Plaintiffs assert against the Georgia Defendants in the Second Georgia Complaint were included within the scope of the claims settled between the Trustee and the Georgia Defendants. To answer that question, the court must determine if the Trustee had standing to settle the causes of action included in the Second Georgia Complaint. To the extent the claims are claims the Trustee could bring on behalf of the Debtor, then the Trustee had the right to both bring and settle those claims, and the Georgia Plaintiffs should be enjoined from pursuing them. See In re Salander, 472 B.R. 213, 221 (Bankr. S.D.N.Y. 2012); Glo-Tex, 2010 WL 4916574, at *3 ("Even if a creditor in a chapter 7 case could raise an estate claim derivatively, its right to pursue that cause of action is extinguished upon settlement by the trustee."). Settlement by the trustee does not amount to abandonment of a claim. However,

to the extent those claims are direct actions that are personal to the Georgia Plaintiffs, they are not property of the estate, the Trustee did not have the power to settle those claims, and the Georgia Plaintiffs can continue to pursue them. In re Derivium Capital, LLC, 380 B.R. 392, 402 (Bankr. D.S.C. 2007) ("Without standing to bring a creditor's personal claim, it would necessarily follow that a trustee would lack authority to settle such a claim.").

23. As was recognized by the Bankruptcy Court for the District of South Carolina in the Glo-Tex case, neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure specifically contemplate the type of relief sought in the Motion to Enforce. Glo-Tex, 2010 WL 4916574, at *3. Parties in both Glo-Tex and In re Bostic Construction, Inc., 435 B.R. 46 (Bankr. M.D.N.C. 2010) filed motions similar to the Motion to Enforce, and those bankruptcy courts used a Federal Rule of Civil Procedure 12(b)(6) standard to examine the creditors' complaints and determine whether they were barred by a trustee's prior settlement. Glo-Tex, 2010 WL 4916574, at *3; Bostic, 435 B.R. at 59-60. This court agrees with that approach and will adopt a 12(b)(6) standard to determine whether the claims in the Second Georgia Complaint are barred by the Trustee's settlement with the Georgia Defendants. Therefore, the court will accept as true all of the Georgia Plaintiffs' factual

allegations and construe the Second Georgia Complaint in the light most favorable to the Georgia Plaintiffs. The court will not determine whether the Georgia Plaintiffs have stated claims for relief in the Second Georgia Complaint but will only decide whether the causes of action, as pled, fall within the scope of the claims settled by the Trustee with the Georgia Defendants or, in the alternative, are personal to the Georgia Plaintiffs. As stated in the Georgia Plaintiffs' Response, it is not this court's concern whether the claims they have asserted in the Second Georgia Complaint prove to be legally or factually valid. "The narrow question before the [c]ourt is whether the claims belong to the estate or to the Georgia Plaintiffs." Georgia Plaintiffs' Response at 15.

24. Finally, this court has the inherent authority to interpret and enforce its prior orders. Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009). In addition, this court has jurisdiction to enforce its orders by issuing an injunction. Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 638 (S.D.N.Y. 1997).

25. As this court explained in Mitchell v. Greenberg (In re Creative Entertainment, Inc.), No. 00-3114, slip op. (Bankr. W.D.N.C. May 28, 2003), the bankruptcy trustee of a corporate debtor has standing to assert only three types of claims: (1) claims that belong to the debtor corporation under state law;

(2) avoidance actions under Chapter 5 of Title 11; and (3) avoidance actions under applicable state law pursuant to 11 U.S.C. § 544. Id. at 13. State law dictates whether a cause of action belongs to the debtor corporation (and, therefore, the Trustee pursuant to § 541(a)) or to an individual creditor. Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 135 (4th Cir. 1988).

26. Upon a review of the Second Georgia Complaint, it appears the Trustee would have had standing to bring only two of the ten causes of action: the alter ego claim, Count 8, and the claim for injunction and avoidance of fraudulent transfer, Count 9. Accordingly, the Georgia Plaintiffs should be enjoined from pursuing those claims in the Second Georgia Complaint.

27. In Count 8 of the Second Georgia Complaint, the Georgia Plaintiffs claim that BB&T, Carl Marks, and Jeff Kies were the alter ego of the Debtor. Under North Carolina law, alter ego claims belong to the bankruptcy estate and may only be asserted by the Trustee. Alvarez v. Ward, No. 1:11cv03, 2012 WL 113567, at *4 n.5 (W.D.N.C. Jan. 13, 2012)(citing Holcomb v. Pilot Freight Carriers Inc., 120 B.R. 35, 41-42 (M.D.N.C. 1990)); Mitchell, slip. op. at 24-25; Sigmon v. Esposito (In re Rahab Trust & Management), No. 01-3182, slip op. at 14 (Bankr. W.D.N.C. Mar. 4, 2002).

28.    Likewise, in Count 9 of the Second Georgia Complaint, the Georgia Plaintiffs seek to avoid a fraudulent transfer of the Debtor's property[2] from Robert Drum, Steve Arndt, Cynthia Gabriel, Dianne Fulbright, Boyd Drum, and Brevard Arndt (collectively, the "Defendant Directors") to BB&T pursuant to the Uniform Fraudulent Transfer Act. However, because this state law cause of action challenges a pre-petition transfer of the Debtor's property, it belongs to the Debtor's estate and, therefore, the Trustee. Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1275 (5th Cir. 1983); Angell v. Kelly, 336 F.Supp.2d 540, 545-546 (M.D.N.C. 2004); In re Bridge Info. Sys., Inc., 325 B.R. 824, 835-36 (Bankr. E.D.Mo. 2005) (citing Ruppert, 187 F.3d at 441); Sigmon, slip op. at 12 ("[A] bankruptcy trustee clearly has standing under Section 544 to assert a state law avoidance action."). Therefore, the Georgia Plaintiffs are barred from pursuing Counts 8 and 9 of the Second Georgia Complaint. The remaining claims are personal to the Georgia Plaintiffs.

29.    The first claim in the Second Georgia Complaint is one for constructive fraud against the officers and directors of the

---

[2]Count 9 of the Second Georgia Complaint contains a vague statement about the property that was allegedly transferred. Second Georgia Complaint at 22 ("Sometime in early 2013, the Defendant Directors transferred approximately $900,000-$1,400,000 of property to BB&T ("Fraudulent Transfer").") . Based on the entirety of the complaint, the court concludes that the "property" referenced in Count 9 was the Debtor's property.

Debtor. A claim for constructive fraud requires a showing that the plaintiff and defendant were in a relationship of trust and confidence that led to and surrounded the consummation of a transaction in which the defendant took advantage of that position of trust and injured the plaintiff. Keener Lumber Co. v. Perry, 149 N.C. App. 19, 28 (2002) (citing Terry v. Terry, 302 N.C. 77, 83 (1981)). In short, a plaintiff must show the existence of a fiduciary duty and a breach of that duty. Id. The general rule is that directors of a North Carolina corporation do not owe a fiduciary duty to creditors of a corporation. Bostic, 435 B.R. at 62. An exception exists, however, under circumstances amounting to a winding up or dissolution of the corporation. Id.

30. Under North Carolina law, a claim brought by a creditor against a director of a corporation alleging constructive fraud due to a breach of fiduciary duty owed directly to the creditor is a claim founded on injuries peculiar or personal to the individual creditor and, therefore, belongs to the creditor and not the corporation. Keener Lumber, 149 N.C. App. at 26-27. Count 1 of the Second Georgia Complaint alleges that the directors and officers of the Debtor had a longstanding relationship of trust and confidence with and owed a fiduciary duty to the Georgia Plaintiffs. The complaint further alleges that the officers and directors breached that fiduciary duty

20

under circumstances amounting to a winding-up or dissolution by: (1) representing to them that they would be paid for shipments of wheat when the officers or directors knew, or should have known, that they would not and while making debt payments to BB&T; (2) turning down deals that would have resulted in some payment to the Georgia Plaintiffs and failing to consider filing bankruptcy to preserve value for creditors; and (3) representing to the Georgia Plaintiffs they would be substantially paid upon the sale of the Debtor while knowing BB&T would not consummate a sale that paid off the Georgia Plaintiffs.

31. As in <u>Keener</u>, the claim as alleged arises from a purported breach of fiduciary duty owed by the directors and officers of the Debtor directly to the Georgia Plaintiffs and belongs to the creditors and not the corporation. Therefore, this claim was not part of the bankruptcy estate, the Trustee did not have authority to bring it, and it was not included in her settlement with the Georgia Defendants.

32. Count 2 of the Second Georgia Complaint alleges aiding and abetting constructive fraud against Jeff Kies, Carl Marks and BB&T. Whether or not such a claim exists under North Carolina law is an unsettled question. <u>Bostic</u>, 435 B.R. at 66-67. However, to the extent such a cause of action exists, it is personal to the Georgia Plaintiffs to the same extent as a claim for constructive fraud. <u>Id.</u>

33.   The remaining claims in the Second Georgia Complaint are for unfair and deceptive trade practices against all defendants; fraud against all defendants; negligent misrepresentation against the Debtor's directors and officers, Carl Marks, Jeff Kies, and BB&T; and attorneys' fees, expenses of litigation, and punitive damages. In the claim for fraud, the Georgia Plaintiffs allege that BB&T, through Carl Marks and Kies, and the Debtor's officers and directors represented to the Georgia Plaintiffs that they would be paid if they allowed a sale of the Debtor to go through and refrained from filing an involuntary bankruptcy. According to the Second Georgia Complaint, the defendants knew these representations were false because they had no intention of paying the Georgia Plaintiffs, the representations were made with the intent to deceive, the Georgia Plaintiffs reasonably relied on the representations by continuing to ship wheat to the Debtor and were in fact deceived, causing damages to the Georgia Plaintiffs. Similarly, in the claims for negligent misrepresentation, the Georgia Plaintiffs assert that the named defendants owed them a duty of reasonable care and that the Georgia Plaintiffs justifiably relied to their detriment on representations that upon the sale of the Debtor they would be paid all or most of their debt if they would refrain from filing an involuntary bankruptcy petition against the Debtor. The Georgia Plaintiffs allege that

the named defendants should have known those representations were false and that the defendants' negligence in making the representations caused the Georgia Plaintiffs harm.

34. In _Angell v. Kelly_, in determining whether individual creditors or a bankruptcy estate had standing to bring claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices, the District Court focused on the fact that the representations were made directly to the creditors to induce action on their part. _Angell_, 336 F.Supp.2d at 547. The inducement was targeted only at the creditors and affected only debt obligations held by them. _Id._ On that basis, the court held that because "Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on distinct conduct and unique injuries apart from other . . . creditors, Plaintiffs have standing to pursue these claims." _Id._

35. Similarly, accepting as true the factual allegations in the Second Georgia Complaint, the court concludes that the Georgia Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on representations made directly to the Georgia Plaintiffs that caused them unique injury. Therefore, these claims were not property of the bankruptcy estate, could not have been released by the Trustee in her settlement with the Georgia Defendants,

and may be pursued by the Georgia Plaintiffs in the Second
Georgia Complaint. Having determined that the Georgia Plaintiffs
should only be enjoined from pursuing Counts 8 and 9 of the
Second Georgia Complaint, the court finds no legal basis to
enjoin them from pursuing Count 10 for attorneys' fees, expenses
of litigation, and punitive damages.

36. In addition to their legal arguments, the Georgia
Defendants argue that as a matter of public policy, the filing
of the Second Georgia Complaint is an affront to and
"antithetical" to the bankruptcy process and, "if permitted to
go unchecked, will undermine critical aspects of federal law and
policy underlying the bankruptcy process." Motion at 3. The
Trustee insists that the filing of the Second Georgia Complaint
is a "late-date end-run around this Court's Orders as a means of
avoiding the consequences of [the Georgia Plaintiffs'] prior
actions and decisions before and during this case." Trustee's
Response at 12.

37. There may have been some truth to these arguments when
the Georgia Plaintiffs filed the First Georgia Complaint. Even
counsel for the Georgia Plaintiffs recognized at the hearing on
the Motion to Enforce that the filing of the First Georgia
Complaint was "probably" a violation of the automatic stay under
the Ruppert decision. However, at this point, the Trustee has
settled any claims she had against the Georgia Plaintiffs and

the Georgia Defendants and fully administered the Debtor's bankruptcy estate. In her settlement with the Georgia Defendants, the Trustee specifically released them from claims or causes of action that <u>she had standing to pursue</u> on behalf of the Debtor or the Debtor's estate. In addition, the Georgia Plaintiffs' Settlement Order explicitly excepted any claims the Georgia Plaintiffs had against the Georgia Defendants and made no determination regarding the Georgia Plaintiffs' standing to pursue claims against the Georgia Defendants. Finally, the Trustee consented to lift the stay of the First Georgia Complaint to allow the Georgia Plaintiffs to pursue claims they had standing to bring on their own behalf against the Georgia Defendants.

38. Given the specific release language in these settlements with the Trustee, it is difficult to conclude that the Second Georgia Complaint is an end-run around this court's orders. To the contrary, it appears that the filing of the Second Georgia Complaint was contemplated by the Trustee's settlement with the Georgia Plaintiffs and Defendants, at least to the extent that the Georgia Plaintiffs filed claims the Trustee did not have standing to pursue in this court. Once the Trustee had her first crack at pursuing potential estate claims, the Georgia Plaintiffs should not be precluded from pursuing claims that the Trustee did not have standing to bring on behalf

of the estate and that are personal to them. Such litigation is not an affront to the bankruptcy process and will have not have an affect on this bankruptcy case.

39.   Therefore, because the Trustee lacked standing to bring claims consistent with Counts 1 – 7 of the Second Georgia Complaint, the court finds no basis to enjoin the Georgia Plaintiffs from pursuing either those claims or Count 10. Because the Trustee did have standing to bring claims consistent with Counts 8 and 9, those claims were resolved by the Trustee's settlement with the Georgia Defendants and cannot be pursued by the Georgia Plaintiffs in the Second Georgia Complaint. Accordingly, the Motion to Enforce is granted with respect to Counts 8 and 9 of the Second Georgia Complaint, and the Georgia Plaintiffs are enjoined from pursuing those claims. The Georgia Plaintiffs shall have twenty (20) days from the date of the entry of this order to withdraw Counts 8 and 9 of the Second Georgia Complaint. Failure to do so may result in this court finding the Georgia Plaintiffs in contempt.

40.   Thus, for the reasons stated above it is hereby **ORDERED** that:

1.   The Motion to Enforce is **DENIED** with respect to Counts 1 – 7 and 10 of the Second Georgia Complaint, and the Georgia Plaintiffs may continue to pursue those claims.

2.  The Motion to Enforce is **GRANTED** with respect to Counts 8 and 9, and the Georgia Plaintiffs are enjoined from pursuing those claims.

3.  The Georgia Plaintiffs shall have twenty (20) days from the date of the entry of this Order to withdraw Counts 8 and 9 of the Second Georgia Complaint. Failure to do so may result in this court finding the Georgia Plaintiffs in contempt.

4.  Each party shall bear its own costs incurred in connection with the Motion to Enforce.

**This Order has been signed electronically.     United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.**